STATE OF MINNESOTA ex rel. HENRY W. CHILDS, Attorney General, v. CLARENCE E. BONDY and Others.[1]

November 19, 1896.

Nos. 10,332—(47).

**Hospital for Insane—Location—Reconsideration—Laws 1895, c. 157.**
    *Held*, that under Laws 1895, c. 157, entitled "An act to create a commission to locate, acquire land and prepare plans for a fourth hospital for the insane," the location of a site within the meaning of the act signifies and includes not merely a determination as to that part of the state where it should be located, but also a selection and designation of the precise tract or parcel of ground upon which the hospital should be located, and until this was done the location was incomplete, and therefore the commission still had the power to reconsider any partial or tentative action which it had taken upon the subject.

**Same—Complete Location—Contract—Acceptance.**
    *Held*, further, that conceding, without deciding, that after the commission had once located a site, its power would be functus officio, and therefore without the power to reconsider or change its location, yet, upon the facts appearing in the record, the viva voce vote on the location of a site, by which the commission voted to locate it at Hastings, did not amount to a complete location or selection of the site within the meaning of the act, nor did it amount to such an acceptance of the offer of the city of Hastings as to make it a binding contract between the parties, and hence it was within the power of the commission to locate the site elsewhere.

Appeal by relator from an order of the district court for Ramsey county, Brill, Kelly, and Otis, JJ., dissolving a writ of injunction. Affirmed.

[1] Reported in 68 N. W. 1075.

*Stringer & Seymour, Hodgson & Schaller,* and *John M. Gilman,* for appellant.

*Warner, Richardson & Lawrence* and *Geo. H. Wyman,* for respondents.

BUCK, J. An act of the legislature approved April 9, 1895, authorized the governor to appoint seven persons, who should constitute a commission to locate and purchase a site for the fourth state hospital for the insane at some point as near to the cities of St. Paul and Minneapolis as might be practicable, and which, in the judgment of the members of the commission, should be most available and suitable. They were authorized to receive proposals from towns, villages, or cities, or the inhabitants thereof, relative to the advantages of their respective localities, with a guaranty for the sale to the state at a reasonable price of a suitable tract of land, with suitable sewerage, water privileges, etc. They were directed to purchase not less than 640 nor more than 1,000 acres of land for a site and for the use of said hospital. But before selecting a site for said hospital they were required to advertise in two daily papers at St. Paul and Minneapolis for three weeks, asking for offers from persons or corporations of a suitable site for said hospital. After properly examining all of such proposed sites, said commission was authorized to select and secure such a site for said hospital as should, in their judgment, be most advantageous to the state for the purpose contemplated by said act, and for that purpose said commission was authorized, in the name and on behalf of the state, to enter upon, purchase, take, and acquire any lands and premises, public or private, necessary, convenient, or proper for the purpose of such a site, or any part thereof; and, in case the owner of any such lands or grounds and said commission could not agree as to the value of the premises taken or to be taken for such site, then such value was to be determined by condemnation proceedings. Said commission was directed to cause plans to be made for such hospital and an estimate of the cost thereof under said plans, and report the same, together with a statement, showing the location of such site and the amount paid therefor, to the legislature at its next session. Said site was not to cost more than $15,000.

In pursuance thereof, the governor appointed the defendants Bondy, Block, Carlson, Merriman, Eastman, Hoper, and Smith as such com-

mission, who duly accepted, and organized by the election of O. C. Merriman as president and Alvah Eastman as secretary, and on June 26, 1895, said commission advertised, as required by said act, for offers of a suitable site for said hospital.    There was no law requiring said commission to keep a record of its action or proceedings, but it did so to a limited extent.    Under and pursuant to said advertisement, offers were received for a site for said hospital from six or seven different parties or municipalities, and, among others, three from the city of Anoka, one from the city of Hastings, and one from a party whose land offered was located about three miles from Hastings. The material part of the offer made by the city of Hastings is as follows:

"The city of Hastings hereby proposes to furnish a suitable tract of land for a site for the use of said hospital, with suitable water privileges and sewerage, containing 643 acres of land, with water power, and hereby agrees to sell and convey the said tract of land to the state of Minnesota for the sum of fifteen thousand dollars. The site offered is situated on the banks of the Vermillion river, at an elevation of 100 to 125 feet above the waters of the Mississippi river, about one and a half miles from the city of Hastings."

Pursuant to said advertisement, said commission met on August 22, 1895, to consider the offers or propositions received under said advertisement, and thereupon proceeded to visit, inspect, and examine each and all of the sites offered, as required by said act.    Thereafter, on December 18, 1895, said commission met at the capitol in the city of St. Paul, pursuant to a call, to further consider the location and locate the fourth insane asylum and transact such other business as might come before the commission.    At this meeting delegations from various places appeared before the commission, and advocated the propositions made by their several places.    Thereupon Mr. Smith moved that the commission take an informal vote on location of site, which was carried, the members voting viva voce as follows:    Bondy, Hastings; Block, Jordan; Carlson, Chaska; Smith, Hastings; Merriman, Anoka; Eastman, Anoka; Hoper, Hastings.    Eight formal votes were then taken with the same result.    On the ninth formal vote four of the members voted for Hastings and three for Anoka, and on the tenth formal vote it was unanimous for Hastings.

Subsequently the commission held meetings as follows:    December 19, 1895, at St. Peter; December 20, 1895, at Rochester; and on

December 27, 1895, at Fergus Falls.   At the meeting held at the latter place Mr. Eastman moved that the vote taken by the commission at its meeting held at St. Paul, Minnesota, December 18, 1895, in favor of the location of the hospital at Hastings, be reconsidered. This motion was seconded by Mr. Hoper, and upon roll call the members voted as follows:   Block, Merriman, Eastman, and Hoper voted aye; Bondy, Carlson, and Smith voted no.   Motion declared carried, and the vote reconsidered.   Thereupon the commission, by the same vote, except Smith, who declined to vote, adopted a resolution which in part is as follows:

"Whereas, said commission has properly examined all such proposed sites, and has determined and decided that the site hereinafter described is the most advantageous to the state for the purposes contemplated in said act, and the proposers of such site have obligated themselves to convey the same, and all thereof, to the state in fee simple, for the sum of fifteen thousand dollars:   Now, therefore, be it resolved, that said commission do hereby select and designate as the site for such fourth state hospital for the insane the following tract of land situate in the county of Anoka, and state of Minnesota, and known and described as follows."

This resolution then particularly described the several parcels of land so located and selected, and then continued as follows:

"And be it further resolved, that the proposition of offering said hereinbefore described site be, and the same is hereby, accepted, and that said commission do hereby agree to purchase said site in the name of and on behalf of said state for the sum of fifteen thousand dollars, but only upon the express condition that deeds in proper form conveying said site, and all thereof, to the state of Minnesota, in fee simple, free from all incumbrance, shall be executed and delivered within thirty days from this date; and be it further resolved, that upon the execution and delivery of such deeds within said time the chairman and secretary of said commission be, and they are hereby, authorized and instructed to draw, or cause to be drawn, upon the state auditor, proper warrants for the purchase price of said site in favor of the respective parties entitled thereto, and to deliver the same to such parties."

Thereupon the owners of the parcels of land so selected as a site for the fourth state hospital for the insane executed a deed to the state of said premises and the commission drew and delivered to them a voucher for the sum of $15,000, the purchase price of said land.

This action was brought for the purpose of restraining the commission appointed to locate, acquire lands and procure plans for a fourth

hospital for the insane, under Laws 1895, c. 157, from reporting to the state auditor, or any other state official, that it had located the hospital at Anoka, or at any other place than Hastings; also from purchasing a site for the hospital at Anoka, from contracting for a site for a hospital there, or at any other place than Hastings; from paying out, or causing to be paid out, for a hospital site at Anoka or any other place, any money under chapter 157; from reporting to the legislature that it had located the hospital at Anoka, or any other place than Hastings; and from taking any further steps or action whatever looking to or contemplating the location of the hospital at Anoka, or elsewhere than at Hastings; from repudiating or attempting to repudiate or revoke the action claimed to have been taken and had by the commission locating the hospital at Hastings; from revoking or attempting to revoke or repudiate the contract claimed to have been made and concluded with Hastings for the location of the hospital at that place; from making or causing to be made or prepared any plans or specifications for the hospital to be located at Anoka, or otherwise than at Hastings; and, further, to restrain the city of Anoka from confederating with the commission, aiding, abetting, or advising the commission, or any member, or doing anything looking to or contemplating the aforesaid acts. No other relief is sought. The action, then, is simply one for a permanent injunction. Thereafter a motion was made in behalf of a majority of the commission to dissolve said injunction, which motion was granted, and from that order an appeal was taken to this court.

This action is brought in the name of the state on the relation of the attorney general, and all of the individual members of the commission and the city of Anoka are made defendants. We should probably have stated the facts more fully, and that, after Mr. Smith had made the motion to take an informal vote upon the location of a site, which was then carried, he again moved that the commission proceed to a formal vote, the ballot to be continued until the place was chosen. While this motion was not voted upon, yet the minute of the proceedings of the commission, immediately following the record of this motion, is as follows:

"The commission then proceeded to the first formal ballot with the following result: Bondy, Smith, Hoper voted for Hastings, Carlson for Chaska, and Block, Merriman, and Eastman for Anoka."

On the ninth formal ballot four members voted for Hastings and three for Anoka, and the minutes immediately following state that Hastings, having received a majority of the votes, was declared selected, and on motion of Mr. Smith the vote was made unanimous.

The proceedings indicate quite conclusively that the members were voting generally as to the location, and not for any particular site. The city of Anoka had offered three sites. Can it be reasonably said that the members voting for Anoka were voting for any particular site, when no such site was designated, referred to, or particularly described? Suppose that four of the members—a majority—had voted for Anoka, which site would have been the one designated? Certainly no particular site. That such vote would have indicated that the hospital site was to be located at the city of Anoka, or in its vicinity, would admit of no doubt. This rule applies also to the city of Hastings. The location was to be at said city, or in its vicinity, but no particular site was selected or designated.

The law does not confine the location or selection of a site to a town, village, or city, but to some point as near as might be practicable to the cities of St. Paul and Minneapolis, and which, in the judgment of the members of the commission, would be most available and suitable, and which also, in their judgment, would be most advantageous to the state, for the purposes of a hospital for the insane. The location, within the meaning of the act, clearly signifies and includes not merely a determination on the part of the state where it should be located, but also a selection and designation of the precise tract or parcel of ground upon which it should be located. Until this was done, the location was still incomplete. Conceding, without deciding, that after the commission had once located a site it would be functus officio and without the power to reconsider and change its action, still, so long as the matter of location was incomplete, the commission would have the power to reconsider any partial or tentative action which it might have taken upon the subject.

Taking into consideration all the facts which appear from the record, we are of the opinion that the viva voce vote on "the location of a site" by which the commission voted to locate it at Hastings did not amount to a complete location or selection of the site within the meaning of the act; that the matter was still in fieri and hence within the power of the commission to locate the site elsewhere if they saw

fit. This being so, it follows, a fortiori, that under any view of the law there was no such acceptance of the offer of the city of Hastings as would constitute it a binding contract between the parties.

This disposes of the case, and the result is that the order of the trial court dissolving the injunction is affirmed.